## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Charles P. Rickman,

                           Petitioner,

v.                                                   Case No. 16-3099-JWL

Claude Maye,

                           Respondent.

### MEMORANDUM & ORDER

Charles P. Rickman, a federal prisoner appearing pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241.  The petition raises two claims.  He asserts that the Bureau of Prisons erred by partially denying his request for a retroactive concurrent designation and that he is entitled to have the entirety of his 120-month federal sentence run concurrent to a state sentence he served.  Mr. Rickman further contends that the BOP, to the extent it granted his request for a retroactive concurrent designation, erred when it calculated the start and release dates for his federal sentence.  In its answer and return, the government contends that the court should deny the petition because Mr. Rickman is not entitled to have his full sentence run concurrently with his state sentence and the BOP has undisputedly calculated Mr. Rickman's federal sentence correctly.  As will be explained, Mr. Rickman's petition is granted in part and denied in part.

The record reflects that in July 2000, Mr. Rickman was arrested by state authorities in Texas for unauthorized use of a motor vehicle and possession of a firearm.  During the arrest, officers learned that officials in another county were investigating several robberies in which

Mr. Rickman may have been involved. Ultimately, Texas state authorities declined to prosecute Mr. Rickman on the stolen vehicle charge, but charged him with robbery and he remained in Texas primary jurisdiction on that charge. In the meantime, federal authorities identified a felon-in-possession charge and Mr. Rickman was indicted in December 2000. On September 7, 2001, Mr. Rickman was sentenced in federal court to a 120-month term of imprisonment for being a felon in possession of a firearm. At the time that sentence was imposed, Mr. Rickman was under the primary jurisdiction of state authorities in Texas and in federal custody pursuant to a writ. After sentencing, Mr. Rickman was returned to the primary jurisdiction and physical custody of Texas state authorities.

In September 2002, Mr. Rickman was sentenced in Texas state court to serve a 20-year term for aggravated robbery. The state sentencing judge, pursuant to Mr. Rickman's plea agreement in the state case, ordered that the term of imprisonment run concurrently with the federal sentence imposed in September 2001. Mr. Rickman's federal judgment, however, was silent as to whether the sentence should run consecutively or concurrently with the then-forthcoming sentence in state court. Accordingly, the federal sentence was presumed to run consecutively to the state sentence and the federal sentence was not commenced. Mr. Rickman remained in state custody serving his state sentence.

In early May 2013, the Court of Criminal Appeals of Texas, on Mr. Rickman's unopposed petition for writ of habeas corpus, held that Mr. Rickman's plea agreement was involuntary because the State was unable to fulfill that part of the plea agreement providing that Mr. Rickman's sentence run concurrently with his federal sentence. The Court of Criminal Appeals vacated the judgment in the state case and Mr. Rickman was ultimately resentenced on

2

May 29, 2013 to an 11-year term with credit from May 10, 2002.  His state sentence, then, expired on June 6, 2013.  Nonetheless, Mr. Rickman remained in state primary jurisdiction and physical custody because, back in 2002, the state of Texas revoked Mr. Rickman's parole in an unrelated case and Mr. Rickman was required to continue service of a 20-year term in that case. That sentence had an anticipated discharge date of March 20, 2014.

In July 2013, Mr. Rickman was paroled from his Texas state sentence and was released into exclusive federal jurisdiction and physical custody to commence service of his 120-month federal sentence.  The BOP initially commenced Mr. Rickman's sentence on July 22, 2013, the date he came into federal custody.  In September 2014, however, the BOP initiated a *Barden* review in response to Mr. Rickman's request that his federal sentence be served concurrently with the state sentence, which would be accomplished by the BOP designating the state institution for service of his federal sentence (which, in turn, would have the effect of giving Mr. Rickman credit for the time he served in state custody).  *See Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990).  In determining whether to issue a retroactive concurrent designation and in accordance with its policy, the BOP sought guidance from the federal sentencing court to determine whether it was the federal court's intent that the state and federal sentenced would run concurrently.  In response, the sentencing court, in October 2014, recommended that 60 months of Mr. Rickman's sentence be designated retroactively to have run concurrent with the state sentence and that 60 months run consecutive to the state sentence.  The BOP determined that a retroactive nunc pro tunc designation consistent with the federal sentencing court's recommendation was appropriate and the BOP issued a nunc pro tunc designation for 60 months to effectuate the concurrent portion of Mr. Rickman's federal sentence.

3

In his habeas petition, Mr. Rickman first contends that he is entitled to have his full 120-month federal sentence run concurrent to his state sentences and that the BOP has abused its discretion in partially denying his request for a retroactive concurrent designation.  In support of his claim, he attaches a filing by the government in his underlying federal case in which the government did not contest his request for the sentencing court to order a concurrent sentence.[1] But even with the government's agreement that the entirety of Mr. Rickman's federal sentence should have run concurrently with his state sentence, Mr. Rickman is simply not entitled to the relief he requests.  Because the federal sentencing court was silent at the time of sentencing as to whether the federal sentence should run concurrently or consecutively to the anticipated state sentence, there is a statutory presumption that the sentences would run consecutively.  *See Heddings v. Garcia*, 491 Fed. Appx. 896, 899 (10th Cir. 2012) (citing 18 U.S.C. § 3584(a)). The Bureau of Prisons has no authority to choose between concurrent and consecutive sentence. *Id*.  Rather, the BOP may consider a request from an inmate for a retroactive concurrent designation under *Barden*—which occurred here.  *See id*.  Significantly, Mr. Rickman does not contend that the BOP did not properly apply the statutory rubric for determining whether to issue a retroactive designation and the record reflects that the BOP considered the statutory factors set forth in 18 U.S.C. § 3621(b).  In applying those factors, the BOP relied heavily—as it is authorized to do—on the post-judgment recommendation of the federal sentencing court.   In light of these facts, Mr. Rickman cannot demonstrate that the BOP erred in refusing his request that the entirety of his 120-month federal sentence run concurrently with his state sentence.  *See*

[1] In its response to Mr. Rickman's motion to alter or amend the judgment in his federal case, the government stated that, while it did not oppose a concurrent sentence, the appropriate vehicle for the relief sought by Mr. Rickman was through a *Barden* request to the BOP.

*id.* (affirming district court's denial of § 2241 petition based on BOP's refusal to grant retroactive concurrent designation; BOP properly applied statutory factors to its decision, including reliance on federal sentencing court's post-judgment statement of intent). This aspect of Mr. Rickman's petition, then, is denied.

Mr. Rickman's second claim is that the BOP, to the extent it granted his request for a retroactive concurrent designation, erred when it calculated the start and release dates for his federal sentence. The BOP computed Mr. Rickman's sentence as follows. The BOP first determined a target release date by adding 60 months (the length of the consecutive portion of Mr. Rickman's sentence) from July 22, 2013—the date he came into federal custody. That calculation yielded a tentative full-term date of July 21, 2018. The BOP then subtracted from that full-term date the number of Good Conduct Time (GCT) days that Mr. Rickman could earn during the 60-month consecutive portion of the sentence—or 235 days. That calculation yielded a target release date of November 28, 2017. Next, the BOP determined the start date of his 120-month sentence. In doing so, the BOP added the amount of GCT that could be earned during the 120-month sentence (470 days) to the target release date, which yielded a date of March 13, 2019. The BOP then subtracted 120 months from that date for a sentence-commencement date of March 14, 2009 and an "expiration full-term date" of March 14, 2019. Circling back around, when the BOP subtracted 470 GCT days from March 14, 2019, the projected release date is November 28, 2017.

Although Mr. Rickman does not articulate his argument in these terms, it is clear that he challenges the way in which the BOP applied his 470 days of GCT to his sentence—and the government has interpreted Mr. Rickman's argument accordingly. As the government notes in

its submissions, Mr. Rickman "seeks to have all his potential good conduct time applied only to the consecutive portion of his federal sentence."  In summary fashion, the government insists that Mr. Rickman's desired computation would result in a "lop-sided computation" that is "not consistent with the manner in which the BOP calculates good conduct time, and would be contrary to the [the] federal sentencing court's intentions."  The court is surprised that the government did not bring to the court's attention any cases—including the only Court of Appeals decision addressing the issue—in which courts have accepted Mr. Rickman's argument and have rejected the BOP's methodology for allocating GCT to inmates serving partly concurrent, partly consecutive sentences.  *See Hogge v. Wilson*, ___ Fed. Appx. ___, 2016 WL 2731714 (4th Cir. May 11, 2016); *Powell v. Hanson*, 2016 WL 1244922 (N.D. Ohio Mar. 30, 2016); *Hood v. Grondolsky*, 2012 WL 6061211 (D. Mass. Dec. 5, 2012); *Hill v. Cowin*, 717 F. Supp. 2d 268 (N.D.N.Y. 2010).  The court fully expects the government to be more forthcoming with pertinent case law in the future.

In *Hogge v. Wilson*, the Fourth Circuit examined the identical methodology employed by the BOP in this case for allocating GCT to inmates serving partly concurrent, partly consecutive sentences.  2016 WL 2731714, at *1.  In doing so, the Circuit first held that the district court erred in granting *Chevron* deference to the BOP Program Statement relied upon by the BOP to justify its calculation method.  *Id.* at *2-3.[2]  The Circuit applied the *Skidmore*-deference framework and concluded that the "rather byzantine" method used by the BOP was

---

[2] The government here does not argue that the BOP is entitled to *Chevron* deference and it directs the court to no particular Program Statement upon which it relies for its methodology.

insufficiently persuasive under *Skidmore* because it conflicted with the GCT statute, 18 U.S.C. § 3624. *See id.* at *3.  As explained by the Fourth Circuit:

> The most glaring conflict is that the BOP's calculation method undermines § 3624(b)(1) by rendering worthless any GCT earned during the concurrent portion of Hogge's sentence.  This is at odds with the clear purpose of the GCT statute to provide inmates with an incentive to comply with prison rules.  *See Barber v. Thomas*, 560 U.S. 474, 482 (2010) ("The reason for [the GCT-credit scheme] is provided in § 3624(b) itself: to provide an incentive for prisoners to 'compl[y] with institutional disciplinary regulations.'" (quoting § 3624(b)(1))).  Under the BOP's method of calculation, Hogge's conduct during the concurrent portion of his sentence is immaterial to the length of time he will spend in prison.  Instead, the GCT he earned during the concurrent portion of his sentence simply altered the day the BOP retroactively deemed as his sentence-commencement date.

*Id.*; *see also Hood,* 2012 WL 6061211, at *5 ("there is no reason why a prisoner should not also be motivated to shorten his federal prison sentence in accordance with federal law"); *Hill,* 717 F. Supp. 2d at 270-71 (concluding that BOP methodology conflicted with statute because it undermined the incentive created by the statute).  The Circuit readily concluded that Mr. Hogge's suggested method of calculation "honors the purpose of § 3624(b)" because "all of the GCT he earned over the course of his entire federal sentence reduces the amount of time he ultimately will spend in prison."  *Hogge*, 2016 WL 2731714, at *3.

The Fourth Circuit found additional conflicts with the statute as well.  According to the Circuit, the BOP's decision to apply some of Mr. Hogge's GCT to the front end of his sentence impermissibly conflicted with § 3624(b)(2), which provides that "credit awarded under this subsection . . . shall vest on the date the prisoner is released from custody."  *See id.* (by applying some of Hogge's GCT to the front end of his sentence to determine the date his sentence commenced, the BOP caused Mr. Hogge's GCT not to "vest on the date [he] was released from custody").  Section 3624(a), in turn, provides that "[a] prisoner shall be released by the Bureau

of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b)." Under the BOP's methodology in Hogge (as here), the BOP's target release date, contrary to the statute, is "the date of the expiration of Hogge's term of imprisonment less *half* of his GCT." *Id*. at *4.

The government does not address any of these conflicts in its submission or the reasoning of any of the decisions that have rejected the BOP's method of calculation. Ultimately, the court is persuaded by the Fourth Circuit's straightforward analysis in *Hogge v. Wilson* and, because it believes that the Tenth Circuit would likely reach the same conclusion, the court rejects the BOP's methodology in this case. The court also rejects the government's suggestion that the BOP's calculation is consistent with the federal sentencing court's intentions. Even assuming that the sentencing court's intent "could trump the demands of the GCT statute," *see id*. at *5, nothing in the record before the court reflects that the federal sentencing court even considered the allocation of GCT with respect to Mr. Rickman's sentence.

In sum, the court concludes that the BOP abused its discretion when it calculated Mr. Rickman's start and release dates with respect to his federal sentence. The BOP should have determined the target release by subtracting the total amount of GCT awarded during the 120-month term of the sentence from the full-term date of the sentence. The BOP is directed to recalculate Mr. Rickman's target release date using this methodology.[3]

---

[3] Based on the court's calculations, and taking into consideration the BOP's disallowance of 21 days of GCT based on a January 2016 incident, the court estimates that Mr. Rickman's target release date is roughly April 28, 2017.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Rickman's petition for relief under 28 U.S.C. § 2241 is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** the BOP shall recalculate Mr. Rickman's target release date using the methodology approved herein as soon as practicable.

**IT IS SO ORDERED.**

Dated this 20th day of July, 2016, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

9